Case 22-3721 James River Casualty Company v. Unicontrol Inc. Oral Argument, 15 minutes per side. Mr. Fisher for the appellant. Good morning, and may it please the court. My name is John- You may proceed. Pardon? I said you may proceed. Thank you. This is Milwaukee Public Library, General Fitz. Thank you, Judge Gibbons. My name is John Fisher. I represent Defendant Appellant Unicontrol in this appeal from a grant of summary judgment against my client, an entry of final judgment against my client, and in favor of Plaintiff Appellee James River Insurance Company, on an interpretation of an exclusion in insurance policies that James River issued to Unicontrol. The genesis of this coverage dispute was an Indiana State Court lawsuit that was filed against Unicontrol, alleging that Unicontrol is liable for subsurface property damage in soil and groundwater that first occurred sometime between 1918 and 1976, and that continued at least until 2020 when the underlying suit was filed. There's no dispute that at least part of the property damage alleged in the underlying suit took place during the James River policy periods from 2015 through 2020, and that that part of the property damage that falls within the James River policy periods falls squarely within the coverage grant of those policies, providing coverage for property damage during the policy period. There's also no dispute that that damage began prior to the inception of the policy, right? We agree, yes, Your Honor, that that is an interpretation of the term began. I didn't ask you what's an interpretation of the term began. I asked you, is there any dispute that the property damage that you just referenced actually began before the inception period? Yes, the property damage began sometime between 1918 and 1976. So when the exclusion states that it begins or takes place before the inception data coverage, which you've just admitted happened, it goes on to say that it's excluded even though the damage may be continuous, dot, dot, dot. I'm having a lot of trouble figuring out why that isn't squirrelly this case. Certainly, while that is the issue on appeal here, is whether there is more than one reasonable interpretation of the terms begins or takes place before the policy period in the exclusion. We do not dispute that that is a reasonable interpretation of that phrase.  If that interpretation of that phrase is determined to be the only reasonable interpretation, then the district court ruled that that was the only reasonable interpretation. We believe under state law principles of insurance policy construction, under both Indiana and Ohio, that as long as there's more than one reasonable interpretation of policy language, then that interpretation that favors the policyholder should be afforded in order to further the policy's basic purpose of indemnity. I got all that, but that begs the question. It started before the policy period and it continued into the policy period, right? That's correct. So it seems to me that the exclusion is crystal clear. We don't get into rules of construction and everything else unless it's ambiguous. What's ambiguous about those words? We believe, at least one of the reasons that we believe, that this exclusion has at least another reasonable interpretation is that there is only one exclusionary phrase begins or takes place before the policy period. The language referencing continuous, progressive, cumulative, changing, or evolving is not a separate exclusionary clause. It describes the type of, it explains the type of property damage that is subject to the exclusion for property damage that begins or takes place before. If I may, the other principle of Indiana and Ohio policy interpretation that applies here is that for an exclusion to be enforceable, it must be stated clearly, explicitly, and unmistakably what it intends to exclude. And I would point, Your Honor, to another part of the policy, which I believe is relevant to the interpretation of this clause, that also deals with this concept. It's the other part of the policy that deals with a concept, of property damage that takes place over a long period of time. And that is coverage E. What I'm grappling with is the plain text of the exclusion that we're talking about. So I'll repeat what I've said. The damage began or took place before the inception period, and then it goes on to describe it, even though the nature and extent of it may be continuous, progressive, cumulative, changing, or evolving. And why isn't that exactly what happened here? Because the reference to continuous is not a separate exclusionary clause. That describes the type of property damage. It modifies, begins, or takes place, right? That's correct. So why isn't, just tell me, why isn't that this case? Well, we believe that there are at least three reasonable interpretations of this policy language. So that is this case, is what you're saying. But there might be other cases. No, we believe that the language of this exclusion is susceptible to at least three reasonable interpretations that would favor Unicontrol's interpretation. What are those, briefly? Certainly. Thank you, Judge Boggs. So there are two, we believe, reasonable interpretations of the terms begins or takes place that favor our interpretation, in addition to the interpretation that James River proffered. One interpretation gives independent and separate meaning to the term begins and to the term takes place. We believe under this reading of the exclusion, these terms are intended to describe the two ways in which pre-inception date property damage can be excluded. There's two types of pre-inception property damage that's excluded. The first type of pre-inception property damage is property damage that both begins and ends before the inception date of the James River policies. That's reflected by the term takes place before. So you would agree under that interpretation this damage both began and took place? Isn't that what you just said? Yes, but the difference here is that the property damage that is alleged in the underlying suit did not both begin and end before the inception date of the coverage. But it uses the word or, not and. Right. Which normally means either one counts. You don't have to have both. Correct. Because what's happening here, according to your friends, are that the damage began and some of it took place during the policy period because that's what you're trying to get coverage for, right? Correct. Or is a different word than and. And that is the second type of pre-inception property damage that we believe under our interpretation is intended to be excluded. There's the property damage that begins and ends before, which we do not have here. There's the property damage that begins before but does not end before the inception date of coverage. Why does that let you out? Or let you in, as it were? How does that avoid their interpretation? Yes, under this reasonable reading, the intention is to point the reader's attention to the period of time before the inception date and to make clear that regardless of which of the two types of pre-inception property damage you have, either the type that begins and ends before the inception date or the type that begins but does not end as of the inception date, that both are excluded by this exclusion. And why does that help you? Because if we point to the begin part, which is the part that favors them, that seems to cover it. And to me, even those are not, as you say, separate exclusions, but they are statements that clever lawyers can't get around this by raising one of those other arguments. That on its face, the damage began sometime between 1918 and 1976. I think that's what you said in setting it up. And so I join my colleague in saying explicitly why does this exclude the exclusion? That's what you really want, correct? You want to exclude this exclusion. We're not seeking to exclude the exclusion, Your Honor. In fact, under our interpretation, we understand that we're not seeking a windfall. Even under our interpretation, we are not seeking complete coverage. Our interpretation will provide us, we believe, with partial coverage, which is the coverage for the portion of the property damage that takes place squarely within the James River policy period. So we understand that even if we win here, we're not getting complete indemnity coverage. We're getting only a portion of what would otherwise have been covered under the policy. We believe that another interpretation of the phrase begins or takes place before does not necessarily need to assign a separate and independent meaning to both begins and takes place. Rather, we believe that this is an example that's all over numerous insurance policies, including this one of what's called a doublet, which is two or more words or phrases that have the same or similar meaning that are all intended to point to the same basic point. And some examples in this policy are contract or agreement, liability or responsibility. And in fact, in this exclusion itself, we need only look three lines down from begins or takes place. For another example, I suppose this would not be a doublet. It would be a quadruplet, as it were. The phrase which we've discussed, continuous, progressive, cumulative, changing or evolving. In this idea of a doublet, I can see your point that something can't take place before the inception unless it begins before the inception, right? So if that's a quintessential example of a doublet, okay, so be it. But how does that help you? Because if you look at begins or takes place as a doublet that is intended to use two phrases to make the same basic point. Takes place before clearly points to the point in time before the inception date. And begins before, one of the standard, if not the most standard dictionary definitions of begins, is to do the first part of a process, to take the first part of an action. In other words, the definition of begins points the reader's direction, attention, to the first part of something. Which here we have a dividing line to tell us what the first part is. It's the inception date of the policy. And so if you read begins or takes place before as a doublet, those are two terms that are similar but not the same in meaning that point to the beginning part of a process, but it's not the entire process. You'll have your time is up. Oh, thank you, Your Honor. My time is up. If I bring the court's attention to one thing about technicality, which might be within my control but I don't know. My image of myself is perfectly clear. My image of the courtroom and council is pretty blurry. The difference that makes is that my image of the time is also blurry. I can sort of tell what's going on but it would be nicer if it were crisp. Is there something we could do about that? We're not sure, Judge Givens. It may be your connection is what Marshall is telling me. That's what I was afraid of. Well, if so, we'll just muddle through. Okay. I'll wave my hand. Okay. We're ready to hear from Mr. Sullivan. Thank you, Your Honor. It pleases the court, Brian Sullivan on behalf of James River, the appellant. And, Your Honor, if you can't see me, hopefully you can hear me, and if you cannot, I'd appreciate it if you would wave or something so I can make sure that I'm communicating efficiently with you. I think my colleague, in answer to the questions and really in the brief that they write, is making this far more complicated than it really is. I think the trial court did a nice job of cutting through all of the other issues and focusing on the exclusion and just using simple contract terms. And that's what this is. It's a contract. And we all know from our days of law school that under a contract, a party to a contract can limit his or her obligations under the contract. And how do you do that? Well, you use words that are simple, that are easy to understand, and it creates no ambiguity. In this case, in the exclusion, the policy clearly says the word begins. There's no confusion as to what the word begins means. I think my colleague in the brief suggested, well, maybe you need to insert the word first in front of the word begins, which I would submit is superfluous because it sort of makes no sense. When something begins, a synonym under any dictionary definition would mean when it starts, commences, or it initiates. So if something begins, like the policy says here, and then you look at the rest of the clause, and I think that's where my friend got mixed up in terms of how do you rationalize the rest of the phrase, trying to create a strained interpretation to say, well, therefore, there's a reasonable interpretation, therefore, it's ambiguous, therefore, under the standard insurance contract principles, it's construed against the insurer. I think in answer to your questions, he found it difficult, as it is difficult, to try to read something that's not otherwise explicitly clear. So if something begins or takes place before the inception, which we all admit from the underlying complaint, the allegation was that the predecessor in interest to unit control operated a facility from 1918 to 1971 or 1976. There's no dispute that the property damage occurred sometime long before 2015 when the policy began. And then the underlying complaint alleges in paragraph 17 that the city remediated the property in 2010, so there's clearly no issue that it began before then. So then you get to the phrase which Your Honor pointed out. That's the even though portion. And I think if you read the clause together, when it begins and then it says even though, it could be continuous, progressive, and it goes on and on, there is no conclusion you can reach other than the one that the trial court reached, and that is there is no duty to indemnify for this loss. I think unit control accepts that, and now they've tried to rationalize, well, there's a pro rata argument recognizing that there's some limitation, but they want to use a pro rata argument. And the trial court, relying on the Garcia case, which I think that exclusion in the Garcia case is very, very similar to this. I mean, it's not exactly every single word. The Garcia case used the word first. This case does not. But it's very similar in applying Indiana law, which is what unit control asked the trial court to do, concluded that if you look at the totality of that, then the exclusion applies, and you don't have to deal with the rest of, you know, whether pollution exclusion or anything else. So I think the answer, as Your Honor asked the question, is pretty clear. There is no duty to indemnify. They didn't touch on the argument, but they raised it in their brief about the duty to defend. We all know that declaratory judgments are used by parties all the time to clarify rights and obligations. Clearly, that's what happened in this case, and the trial court said if there's no coverage, there cannot be no coverage based on an indemnifying complaint. There's no duty to defend, and that's what happened here. The last thing. The thing I'm kind of mystified about this is, I assume that unit control knew about this in 2015 when they took out this policy with James River. The record is unclear. I think the answer is yes, because remember, unit control. How could they not know if the city started to clean it up in 2010? Yeah, I agree with Your Honor that they should have known, but there's no evidence in the record to say whether they did or they did not. But they should have known. Did James River know about it? No, James River became aware of it when the tender was made in 2020 after the underlying lawsuit was filed. So does this policy someplace else require notice of any preexisting condition that you might claim is covered by the policy? No, there's general notice provision in the policy, but none that I think in answer to your question, if it's a known loss, which is what we're dealing with here, and insurance covers fortuitous incidents, so if it's a known loss before the policy even incepts, then clearly you're not going to be able to get coverage for something that's ongoing, not only just the property damage, but the remediation of the property damage. We all agree by whatever machination you want to use that that occurred at least five years when remediation began or many more years than that when the property damage actually took place. Well, it just seems logically speaking, whether this case turns on this or not, that if they expected you to be paying a portion of their remediation costs, that that would have been considered and taken into account before the policy was issued, so you could take it into account in the premium. Yeah, and I think from just general insurance companies, if you said we have this rather significant environmental liability, we want to buy insurance and seek coverage, I don't think it's a question of premium. I think there's going to be no response from the insurance company that's going to offer coverage in a case like that, and I think that's what we're trying to back in where someone said, we have policies out there in 2015. Let's see if they apply, and then when we lose, we'll argue it's a strained interpretation and it's a pro-rata idea, and therefore maybe we can get some coverage, which I think it's clearly not. The last thing I want to point out, and I don't think it's an issue, but there was some remarks in the brief that the trial court somehow relied on erroneous facts. If you look at the trial court's decision, she references, well, let me back up. The facts in this case were stipulated, too, so we created a stipulation and included the underlying complaint, and the court just recited that what's in the stipulation, that the property was utilized by unit control and all of its predecessors from 1918 to 1971, but there's no error in the trial court's analysis that would lead it to the wrong conclusion. She did get it right when she concluded that there's no coverage in this instance. Unless there's any further questions, I believe I'm finished. Thank you. Thank you. Mr. Fisher. Thank you, Judge Gibbons. I have just a couple of points to briefly address on rebuttal. One was the notion that came up during Mr. Sullivan's portion of the argument about whether unit control knew of the contamination and the property damage before 2015. There was no policy defense that was raised on the basis that unit control knew. And there's nothing in the record. What we do know is that in the underlying suit, the allegation is that unit control is alleged to be the successor company of the company that contaminated the soil and groundwater between 1918 and 1976. So would the knowledge of the successor company be imputed to unit control? Unit control denies in the underlying suit that it is the successor. In unit control itself. If it is the successor, then would the knowledge of the predecessor company be imputed to the successor? Your Honor, we have not analyzed that issue. It's nothing that came up in the district court. Just say you don't know. I don't know. Okay. My understanding is that unit control's first knowledge of any of the property damage at issue was in 2020 when it received the lawsuit. And so any notion that this argument is to preserve coverage for something that unit control knew about before the policies were purchased, there's no record of it. I don't understand why the first knowledge would be 2020 when James River filed the declaratory judgment. Something must have triggered James River filing the declaratory judgment in 2020, which I assume was a claim by unit control prior to that. They're not going to file a deck action thinking, well, they're not making any claim, but, gee, down the road they might. Right. The sequence is that in the underlying suit it's alleged that the plaintiff, Michigan City, did discover and conduct some cleanup activity in 2020. Unit control had no knowledge of the contamination. It was even unaware at that point in time that it was going to be alleged to be held liable as the successor to this site. The suit against unit control saying, unit control, you are responsible as successor for some of this property damage, was filed in 2020. I see. And then the claim was... Not the deck action. The coverage claim was asserted and the deck action was filed. I got it. Thank you. Yes. Thank you, Your Honor. All right. We appreciate the argument both of you have given, and we'll consider the case carefully.